Good morning, your honor. May it please the court. Lem Howell representing Dale Emery, plaintiff appellant. This is a de novo standard of review. This case turns on the definition of the term manufacture. Dale Emery was injected with anthrax vaccine, had absorbed A.D.A. in January 2003. Caused him to develop erosive rheumatoid arthritis, a debilitating disease. Dale is an eastern Washington resident. The manufacturer of the vaccine is a Michigan corporation, Bioport Corporation, parent company, now Emergent Biosolutions, Inc. Webster defines manufacture as something made by hand or machine. Black's Law Dictionary, manufacture comes from two Latin words, manus and factory, literally put together by hand. Now it means the process of making products by hand or machine. But now it is a term of art by the U.S. Food and Drug Administration. Manufacture, processing, packing or holding of a drug product includes packaging and laboring operations, testing and quality control of drug products. And that is in the United States. 21 CFR 210, section 210.3, sub 12. Indeed, Bioport's own contract with Hollister Steer provides, and that's in the record at page 171. Hollister Steer represents and warrants to Bioport as follows. 3.51, the product shall be filled in compliance with the specifications as attached. 5.2, the product shall be good, merchantable and usable, quality free of defects in materials and workmanship, suitable for the purposes for which the product is to be used and shall not be adulterated, et cetera, et cetera. And then, Mr. Holt, let me ask you, because I understand that you've asserted only general jurisdiction, correct? There's not an assertion of specific jurisdiction? Your Honor, that's a good question. And I'll tell you why. Because we have not had the discovery to determine which batch it was and where in the process it became so. And going, since the burden is on us, we're really primarily talking about general jurisdiction. But I don't want to exclude specific jurisdiction because we don't know where in the manufacturing process something went wrong, if indeed it did. But if you go, if you look at general jurisdiction, wouldn't you think the Supreme Court has only held one time upheld general jurisdiction? And it's pretty slim pickings for cases that actually uphold general as opposed to specific. It seems to me your burden is to show this approximation of physical presence. Absolutely. And so you have one contract supplier in Washington, correct? Yes, Your Honor, you have one part of the manufacturing process being done in the state of Washington. And as you pointed out in Tuazon, most of those cases that go up to the Supreme Court are foreign manufacturers like Japan and so forth. And so the burden on, what is it, foreign commerce is such that it would be a burden for them to defend the product if there isn't a sufficient basis for it. We're dealing with a national company in Lansing, Michigan, whose manufacturing process continues in the state of Washington. And, Your Honor, I was going to point out that the next paragraph on page 171, 3.54, the manufacturing facilities for the product shall conform to FDA requirements for multiple product facility and all reasonable efforts shall be used to eliminate cross-contamination of products. I was interested in the euphemism used in the appellee's brief when they said they sought to outsource work. And it's, don't you know, it's a Vendor Vendee situation. Not so, because on page 55 of the record, you will find the problem. BioPort's renovated laboratory repeatedly failed to pass FDA inspections, which found contamination, inadequate record-keeping, and unapproved procedures. Several vaccine batches failed sterility tests. Ultimately, BioPort even had to hire another factory, Halster Stier Laboratories in Spokane, Washington, to fill the vaccine vials when its own procedures kept failing. FDA said Thursday that BioPort's own lab and Halster Stier had fulfilled all remaining federal requirements to routinely produce the vaccine. So what we have here is a production that is not complete until some of the vaccine, under temperature control, is shipped under temperature control to Halster Stier in Spokane, maintained under temperature control, and placed in vials and then shipped back to Lansing, Michigan. So we have here a substantial, continuous, and systematic conduct since all, I repeat, all of the ABA is produced, has to go through Washington, and is produced in Washington. Judge McDonald made a mistake in his opinion when he said, quote, there is no contention that ABA was manufactured in Washington. He says that on page six of the record, lines eight and nine, we said in our brief to the judge, quote, BioPort's business with Halster Stier is part of the manufacturing and bottling process for its anthrax vaccine. That's page 71 of the record. Now, having shown that, we get to the issue of reasonableness. Oh, my gosh. Time remaining is short. Okay. You want to save some time for rebuttal, I would think. Yeah, I think you're right, Your Honor. I'll take the Court's advice and I'll go back to my seat. May it please the Court. My name is Gerald Zingoni. I am here on behalf of BioPort Corporation. I think distilled to its essence, we claim to be espousing a new theory of general jurisdiction.  That by outsourcing, a manufacturer can become subject to general jurisdiction in a forum where it outsources. Do you agree that if this were BioPort's own plant in Washington, it would be subject to general jurisdiction? Well, I'm not sure of that. I'm actually kind of a student of jurisdictional and jurisdiction cases, all of them. I think I've read every one in the United States. Certainly, if BioPort had a plant in Washington State, that would be a strong factor, because then you would have property in the State. You would probably be licensed to do business in the State. So I would say you would have most of the factors that would cause you to be submitted to general jurisdiction in the State. But I'm not sure. Who would be missing? What would be missing? You said most of the factors. Well, because general jurisdiction is general. Remember, specific jurisdiction is causes of actions arising out of the activity in the State. General jurisdiction is any cause of action can be asserted in the State. And so, again, if you had a small operation, and, you know, for example, if you read the G.D. Searle case in the Fourth Circuit where G.D. Searle had a fairly enormous presence. Judge Reinhart's question didn't involve a small operation, because he said if BioPort was doing in the State what the outsourced company was doing, which is handling 100 percent of your product. But, again, it would depend on how big is the operation. He asked my question, what's missing? He said most of the factors. I wouldn't be sure. It would depend on what are the number of employees. I don't know, actually, if, frankly, when BioPort was doing this itself, it was a very small operation. And so, again. Does it really matter? I mean, I know we have all these litany of things we kick off, you know, size, revenue, and all the lawyers plop through those and the judges look at them. But if what you really have is something here which is integral to the manufacturing chain, you know, without this piece, which needs FDA approval and supervision, you don't have your product. Why couldn't you have general jurisdiction? Why is that any different than you can't have a jet without a jet engine? And Boeing gets its engines from Pratt & Whitney in Connecticut. I mean, you can't have a lot of things without a jet engine. But this question is suppose Boeing had its own jet engine, owned a jet engine. Connecticut. That's the question, right? I think they might be. And certainly if you were manufacturing jet engines in Connecticut, I would think it would be a substantial operation. You would be subject to general jurisdiction. I'm not trying to fight with you on that. I'm just saying given this filling operation, given the fact that when BioPort did it, I think it had like ten employees, given the fact that given the very small quantity of AVA that is manufactured by BioPort, in three years, Hollister Steer spent 63 days, 63 days, filling for BioPort. I think it's important to note, I mean, in the contract, Hollister Steer says, it's a contract filler in the pharmaceutical industry and experience in the filling services of pharmaceuticals. Hollister Steer is doing this for many, many companies besides BioPort. To be sure, they could not be running a company on 63 days of business from BioPort. They're doing this for several pharmaceutical companies. I mean, this is, again, when you're talking about what they do, they are literally, they get a completely ñ Let me go back to Mr. Howell's comment about specific jurisdiction. I realize there's an issue about whether it's been waived in the district court or whatever. But if you had an allegation that the anthrax that went through Hollister was part of a batch that ultimately the plaintiff here was infected with, would you have specific jurisdiction? I don't think so. Because first of all, you would ñ first of all, Hollister Steer, if in fact something happened at Hollister Steer that caused the injury of the plaintiff, the defendant would be Hollister Steer, probably not BioPort. But again ñ It would be both. Yeah, generally they sue everyone in the line, yeah. But the bottom line is the plaintiff was not inoculated here. I will tell you ñ I understand that. But he's a Washington resident. And let's say you're a Washington resident and the vaccine passed through here, through Hollister. I don't think so. Because certainly, again, based on that theory for specific jurisdiction, every ultimately manufactured product comes from, again, component parts that are manufactured in interstate commerce all over the country. If we were to start parsing and saying jurisdiction happens because I was injured by a GM car that was partially manufactured, you know, the defective fuel system that caused my injury was manufactured in Ohio. And I'm an Ohio resident. Well, that would be like the Washington case of Cross and Volkswagen. I mean, in which the Washington Court of Appeals, I believe it was, found general jurisdiction. So the situation you just described, I think, is very close to that Washington case, which is one of the other few cases where there's general jurisdiction. Yeah. That case ñ I mean, I'm not sure if that case really withstands the helicopterous analysis, frankly. And, again, as I said, I mean, this is a situation, you know, every company outsources. I mean, you know, whether you're Dell Computer in Texas outsourcing the production of a motherboard to a company in Idaho. Okay? You can't have the computer without the motherboard. And, you know, I mean, you can talk about the fact that, I mean, what this company is doing is bottling the product. Okay? You know, that's actually how soft drinks ñ soft drinks get sent in condensed form and they get bottled in regional bottling areas. It's really not a new concept. It's the way industry works in the United States. You know, there's ñ it would be hard-pressed. I mean, maybe Coors. Maybe Coors may be the last company that does, you know, does literally every part of its manufacturing process and packaging process in gold in Colorado. But beyond that ñ and, you know, of course, they don't get their hops from gold in Colorado. I mean, I'm sure they get it from the regional ñ the states around. But I think you're hard-pressed to find any product that's manufactured to say that it's only manufactured, that its component parts only happen in the primary state. The one thing I would say is that, you know, the kinds of contexts that are related to the outsourcing that we have, the bottling, are very typical. I mean, if you look, in fact, even if you look at Helicopteros, where they talked about, you know, the fact that the company, the helicopter company, bought 80 percent of its fleet from Texas, there were, you know, training trips. There were, you know, purchasing trips. I mean, the same kind of process that you would have and that we have, again, for BioPort. But what is the procedural status of the specific jurisdictional claim? I know there was already ñ I know there was discovery, jurisdictional discovery. It's waived. I mean, it's waived several ways. First, they asserted specific and general jurisdiction. Judge McDonald gave jurisdictional discovery, okay? And he was ñ Mr. Howell was free to take whatever jurisdictional discovery that he wanted. In fact, there were times when he, you know, the specific witness he asked for, I said, I think that's the wrong witness, but you take who you want, okay? There were no motions to compel. I made the argument that he made a specific jurisdiction argument in the district court. Judge McDonald commented in his opinion that it seemed to be abandoned. Mr. ñ Mr. Howell made no ñ no statement, no, you're wrong, we have a specific jurisdiction argument. His statement that he wasn't entitled to discovery, didn't get discovery, he was ñ no discovery that was requested was blocked. I mean, ultimately, what ñ what the plaintiff is trying to do is say that somehow by performing this outsourcing that the presence of Hollister Steer can be the ñ can approximate the physical ñ the presence of Bioport. And I ñ and, you know, I don't see, I mean, on an independent contract a relationship like that that you can say that Hollister Steer's bottling of pharmaceuticals for any number of companies, Bioport including ñ and including any number of companies that they do it for, that they, by doing that for other ñ for, you know, a number of pharmaceutical companies have effectively become the physical presence of all those pharmaceutical companies in the State of Washington. My time's up, so I think I'll let you go. Thank you, counsel. Your Honor, before I go forward, I want to say that I've had good cooperation from opposing counsel. I mean, for discovery deposition. He wouldn't let me go into certain areas, but on discovery, he was very cooperative and I want to say that. It's nice of you to say that. It's also a pleasure to hear that from time to time, that stability works out. Your Honor, let me say that it would be reasonable for this case to be held here because defending it would not be a burden. Washington has an interest in providing a forum for its citizens. Plaintiff can only obtain relief in Washington. Financially and physically draining on the plaintiff to try this case in Michigan. In Michigan, plaintiff would have to show fraud or bribery as determined by the FDA. The FDA says if it's FDA approved, and I realize that the Johnson case is going up in the industry in court, and we'll see what happens there. But right now, that rule does not apply in Washington. But that would depend on what the choice of law would be even if you came to Washington, correct? Okay. And that's a good thing. And they raised that in their brief. But the Spider Gaines case, you remember the Spider case that Judge Hamilton wrote the decision on here, said it's a grouping of the contracts. In this case, we had the he was he signed on here in Washington. He was injured at sea. The physicians are here. Medical records are here. The plaintiff is here. Damage witnesses are here. Causation witnesses are here. And so I think we meet those reasonable criteria that you set out. And I think since there is no alternative forum for my client to get a remedy, I urge the court to keep it here. In addition, they were soliciting business here with the chief of police and the fire department and so forth. And when I took the deposition of one of their key persons, they said, were you trying to sell it here? Here. Yes. They were trying to go outside of their usual DOD contracts. Thank you very much for your attention. Thank you, counsel. Case just argued will be submitted. Next case on the calendar. United States versus Barron is submitted on the briefs.
judges: Reinhardt, Tashima, McKeown